**United States District Court**
For the Northern District of California

1

2

3                          UNITED STATES DISTRICT COURT

4                          NORTHERN DISTRICT OF CALIFORNIA

5

6

7    TERRANCE  MOODY,

8              Plaintiff,                    No. C 13-5098 PJH

9         v.                                 **ORDER DENYING MOTION FOR**
                                             **PRELIMINARY INJUNCTION**
10   METAL SUPERMARKET FRANCHISING
     AMERICA INC.,
11
              Defendant.
12   _____/

13

14         Plaintiff's motion for preliminary injunction came on for hearing before this court on

15   January 8, 2014.  Plaintiff Terrance Moody ("plaintiff") appeared through his counsel,

16   Randall Widmann.  Defendant Metal Supermarket Franchising America, Inc. ("defendant")

17   appeared through its counsel, Calvin Litsey.  Having read the papers filed in conjunction

18   with the motion and carefully considered the arguments and the relevant legal authority,

19   and good cause appearing, the court hereby DENIES plaintiff's motion for preliminary

20   injunction as follows.

21                                  **BACKGROUND**

22         This case arises out of a dispute regarding a franchise agreement.  Plaintiff owns

23   two franchises of defendant Metal Supermarkets Franchising America.  Under the terms of

24   the two identical franchise agreements, at the end of the franchise term (which was

25   November 14, 2013), defendant had the option to purchase the franchises' assets from

26   plaintiff.  See Dkt. 20-1 (Moody decl., Ex. A), Dkt. 20-2 (Moody decl., Ex. B) (referred to

27   collectively as the "Agreements").  The Agreements set out a formula for determining the

28   purchase price of the assets, which is the greater of (1) the net book value as defined in the

United States District Court
For the Northern District of California

1   Agreements, or (2) three times the annual pre-tax operating income as defined in the
2   Agreements).  See Agreements, section 14.4.  However, in July 2012, plaintiff took out a
3   small business loan, and the lender required that the purchase-price formula be amended.
4   Specifically, the lender required an amendment to each agreement stating that, if defendant
5   chose to purchase the franchises' assets, plaintiff would receive fair market value for the
6   assets.  See Dkt. 20-6 (Moody decl., Ex. E), Dkt. 20-7 (Moody decl., Ex. F).  Those
7   amendments were executed on July 13, 2012.

8        In August 2013, defendant indicated its intent to exercise its options to purchase the
9   franchises' assets.  However, the parties now dispute the proper purchase price.  Plaintiff
10  argues that he should receive fair market value for the assets (as provided by the
11  amendments to the franchise agreements), while defendant argues that the purchase price
12  is still governed by the original, unamended agreements.

13       On October 7, 2013, plaintiff filed a declaratory judgment action in state court,
14  seeking a declaration as to the purchase price of the franchises' assets.  Ten days later, on
15  October 17, 2013, defendant filed a demand for arbitration of the dispute with the American
16  Arbitration Association in Washington, D.C.  Defendant then removed the case to this court
17  on October 31, 2013, and filed an answer on the same day.  In its answer, defendant
18  asserts the franchise agreements contain an arbitration clause, and that venue is improper
19  in this court as a result.

20       On November 7, 2013, plaintiff filed an application for a temporary restraining order
21  ("TRO"), seeking to prohibit defendant from proceeding with arbitration in Washington, D.C.
22  The court denied the TRO application on November 8, 2013, finding that plaintiff had not
23  identified any irreparable harm that would result if the arbitration proceedings were to go
24  forward, as any damages to plaintiff would be purely monetary.  See Dkt. 15.  Plaintiff then
25  filed this motion for preliminary injunction.

26
27
28

2

**DISCUSSION**

A.    Legal Standard

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. Winter v. Natural Resources Defense Council, Inc., 129 S.Ct. 365, 374 (2008).

Alternatively, the plaintiff may demonstrate that serious questions going to the merits were raised and that the balance of hardships tips sharply in the plaintiff's favor, "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127 (9th Cir. 2011). A "serious question" is one on which the plaintiff has "a fair chance of success on the merits." Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1421 (9th Cir. 1984).

An injunction is a matter of equitable discretion" and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 129 S.Ct. at 376, 381.

B.    Legal Analysis

As discussed above, this action arises out of a dispute over the purchase price of plaintiff's franchises' assets. However, in his motion, plaintiff makes an argument that, if accepted, would render this entire action moot. Plaintiff argues that defendant did not use the correct phrasing when attempting to exercise its purchase option, and as a result, no option was exercised. Specifically, plaintiff argues that the notice of exercise provided on November 11, 2013 was premature, and therefore ineffective, because it was made before the expiration of the franchise agreements on November 14, 2013. The Agreements specify that the purchase option may be exercised "by giving written notice thereof within ten days from the expiration of the agreement." Because the agreement expired on November 14, 2013, plaintiff argues that the ten-day exercise period began on November 15, 2013 and ended on November 24, 2013, and thus any notice provided on November 11

3

United States District Court
For the Northern District of California

1   was a nullity.  Plaintiff admits that defendant did send a letter to plaintiff during the exercise

2   period (specifically, on November 15, 2013), stating that "this letter will constitute

3   [defendant's] official post-expiration notice of its intent to exercise its purchase option," but

4   plaintiff argues that the inclusion of the word "intent" shows that the letter provided notice of

5   only the intent to exercise the option, and thus failed to provide "clear and equivocal notice

6   of exercise."

7        Even if the court were to put aside the fact that plaintiff first raised this argument in

8   reply, the court finds that plaintiff's argument is contradicted by his own cited cases.

9   Plaintiff cites Hayward Lumber & Inv. Co. v. Construction Products Corp., which held that

10  "[i]n order to avail himself of the right to renew a lease as provided for by a lease option, a

11  tenant must apprise the lessor of his unqualified intention to exercise the option, within the

12  time, in the manner and on the terms stated in the lease."  117 Cal. App. 2d 221, 227-28

13  (1953) (emphasis added).  The court finds that, even if defendant's November 11, 2013

14  notice was premature, its November 15, 2013 letter did indeed communicate defendant's

15  "unqualified intention" to exercise the option, and thus sufficed under Hayward Lumber.

16  The court also notes that, if it were to accept plaintiff's argument that defendant never

17  exercised its option, this entire case would be mooted – as plaintiff asserts only a single

18  cause of action, seeking declaratory relief regarding the purchase price of the franchises'

19  assets.

20       Having established that plaintiff's suit is not moot, the court now turns to the four-

21  part Winter test, the first prong of which requires plaintiff to show a likelihood of success on

22  the merits of his claim.  However, plaintiff's motion is unusual in that it does not actually

23  present arguments regarding the likelihood of success on the merits of his declaratory

24  judgment claim, which seeks a judgment that the price of the assets shall be measured by

25  their fair market value.  Plaintiff's preliminary injunction motion does not seek a ruling as to

26  the assets' purchase price, but instead, seeks a ruling preventing defendant from

27  proceeding with arbitration.  Indeed, in his motion, plaintiff claims that he "seeks a

28  preliminary injunction on two bases" – first, arguing that "the arbitration clause is

United States District Court
For the Northern District of California

1  unenforceable," and second, arguing that defendant "is attempting to use its unauthorized

2  arbitration to oppress" plaintiff, and asking the court to "enjoin [defendant] from further

3  pursuit of its illegitimate arbitration proceeding." Dkt. 20 at 11-12.  However, the court does

4  note that plaintiff filed his suit in state court (seeking clarification as to the assets' purchase

5  price) on October 7, 2013, and that defendant initiated arbitration proceedings on October

6  17, 2013.  This case was removed from state court on October 31, 2013, and plaintiff has

7  not filed an amended complaint.  Thus, at the time that the operative complaint was filed,

8  no arbitration proceedings had yet begun, which explains why plaintiff's complaint, as pled,

9  does not seek to enjoin the arbitration proceedings.  While the court will require plaintiff to

10  conform his complaint to fit the relief that he now seeks (assuming the case goes forward),

11  given that the parties have fully briefed the issue of whether plaintiff is likely to succeed on

12  his argument that the arbitration provision is unenforceable, the court will construe plaintiff's

13  declaratory judgment claim as if it already seeks that relief.  Thus, the court's first inquiry

14  under Winter is whether plaintiff is likely to succeed on the merits of his claim that the

15  arbitration provision contained within each franchise agreement is unenforceable.

16       The arbitration provision (which is identical in each of the two relevant franchise

17  agreements) reads as follows:

18       [A]ll controversies, disputes, or claims between the parties . . . arising out of
         or related to their relationship or this Agreement shall on demand of either
19       party be submitted for arbitration to the offices of the American Arbitration
         Association ("AAA") located closest to our principal offices in the United
20       States (or in Washington, DC if we have no such office in the United States).
         Such arbitration proceeding shall take place in the municipality where our
21       principal offices in the United States are located (or in Washington, DC if we
         have no office in the United States) and will be conducted in accordance with
22       the then current commercial arbitration rules of the AAA.  All procedural
         matters relating to the arbitration will be governed by the Federal Arbitration
23       Act of the United States of America.

24  See Agreements, section 16.1.

25       Plaintiff argues that he is "likely to prevail on the issue of arbitrability because the

26  relevant arbitration provision is unconscionable."  Before the court can address plaintiff's

27  unconscionability argument, it must first resolve the threshold question of whether the issue

28  of arbitrability itself has been delegated to the arbitrator.  The Ninth Circuit has held that

1   "the question of arbitrability is left to the court unless the parties clearly and unmistakably

2   provide otherwise."  Momot v. Mastro, 652 F.3d 982, 987 (9th Cir. 2011).  Defendant

3   argues that the parties did indeed delegate the issue of arbitrability to the arbitrator, based

4   on section 16.1's language that arbitration proceedings "will be conducted in accordance

5   with the then current commercial arbitration rules of the AAA."  Defendant points out that

6   AAA Rule 7 provides (in relevant part) that "[t]he arbitrator shall have the power to rule on

7   his or her own jurisdiction, including any objections with respect to the existence, scope, or

8   validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."

9   However, the franchise agreements themselves do not quote this portion of Rule 7, nor do

10  they even refer specifically to Rule 7, instead containing only a general reference to the

11  "then current commercial arbitration rules of the AAA."  In contrast, the relevant provision in

12  Momot stated that the arbitrator would have exclusive authority to determine "the validity or

13  application of any of the provisions of this Section 4" (referring specifically to the arbitration

14  clause).  652 F.3d at 988.  The court finds that the Agreements' general reference to the

15  "then current commercial arbitration rules of the AAA" is not the type of "clear and

16  unmistakable" delegation required by Momot, and thus finds that the threshold question of

17  arbitrability remains with the court.

18         As discussed above, plaintiff's central challenge to the enforceability of the

19  arbitration clause is based on unconscionability.  Unconscionability has both procedural

20  and substantive elements.  Armendariz v. Foundation Health Psychare Servs., Inc., 24 Cal.

21  4th 83, 99 (2000).  Although both must appear for a court to invalidate a contract or one of

22  its individual terms, they need not be present in the same degree – "[T]he more

23  substantively oppressive the contract term, the less evidence of procedural

24  unconscionability is required to come to the conclusion that the term is unenforceable, and

25  vice versa."  Id. at 114.  Plaintiff contends that both procedural and substantive

26  unconscionability are present here.

27         Procedural unconscionability "addresses the circumstances of contract negotiation

28  and formation, focusing on oppression or surprise due to unequal bargaining power."

United States District Court
For the Northern District of California

1  Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), 55 Cal. 4th 223, 246 (2012)

2  (citing Armendariz, 24 Cal. 4th at 114); see also Roman v. Superior Court, 172 Cal. App.

3  4th 1462, 1470 (2009).  "Oppression arises from an inequality of bargaining power which

4  results in no real negotiation and an absence of meaningful choice," while "[s]urprise

5  involves the extent to which the terms of the bargain are hidden in a 'prolix printed form'

6  drafted by a party in a superior bargaining position." Serpa v. California Surety

7  Investigations, Inc., 215 Cal. App. 4th 695, 703 (2013) (citations and quotations omitted);

8  see also Mercuro v. Superior Court, 96 Cal. App. 4th 167, 174 (2002) ("procedural

9  unconscionability focuses on the oppressiveness of the stronger party's conduct").

10      In analyzing procedural unconscionability, the court first focuses on whether the

11  contract was one of adhesion.  Soltani v. W. & S. Life Ins. Co., 258 F.3d 1038, 1042 (9th

12  Cir. 2001).  A contract of adhesion is "a standardized contract, which, imposed and drafted

13  by the party of superior bargaining strength, relegates to the subscribing party only the

14  opportunity to adhere to the contract or reject it." Armendariz, 24 Cal. 4th at 113.  Under

15  California law, a contract of adhesion has an element of procedural unconscionability

16  because it is "presented on a take-it-or-leave-it basis and [is] oppressive due to 'an

17  inequality of bargaining power that result[ed] in no real negotiation and an absence of

18  meaningful choice.'" Nagrampa v. MailCoups Inc., 469 F.3d 1257, 1281 (9th Cir. 2006).

19      Substantive unconscionability focuses on the actual terms of the agreement and

20  evaluates whether they create an "overly harsh" or "one-sided" result.  Armendariz, 24 Cal.

21  4th at 114; see also Little v. Auto Stiegler, Inc., 29 Cal. 4th 1064, 1071 (2003) – that is, the

22  question "whether contractual provisions reallocate risks in an objectively unreasonable or

23  unexpected manner." Serpa, 215 Cal. App. 4th at 703.  Substantive unconscionability "may

24  take various forms," but typically is found in the employment context when the arbitration

25  agreement is "one-sided" in favor of the employer without sufficient justification, for

26  example, when "the employee's claims against the employer, but not the employer's claims

27  against the employee, are subject to arbitration." Id. (citations and quotations omitted).

28      While plaintiff argues that the agreements are unconscionable as a whole, the

United States District Court

For the Northern District of California

1  court's review is limited to the issue of whether the arbitration provision, by itself, is

2  unconscionable.  See Rent-A-Center v. Jackson, 130 S.Ct. 2772, 2779 (2010); Nagrampa,

3  469 F.3d 1257, 1263-64 (9th Cir. 2006).  The court notes that plaintiff's opening motion

4  challenged only the agreements as a whole, and did not present specific arguments as to

5  why the arbitration provision, by itself, was unconscionable.  Under Jackson and

6  Nagrampa, plaintiff's failure to specifically challenge the arbitration provision would be

7  enough to reject his unconscionability argument.  Nagrampa at 1263-64 ("[W]hen the crux

8  of the complaint challenges the validity or enforceability of the agreement containing the

9  arbitration provision, then the question of whether the agreement, as a whole, is

10 unconscionable must be referred to the arbitrator.").  However, because plaintiff's reply

11 brief refines his unconscionability argument to apply directly to the arbitration provision, the

12 court will consider the argument.

13      As to procedural unconscionability, plaintiff argues that he "had no opportunity to

14 negotiate the terms of the arbitration provision," and thus argues that the arbitration

15 provision was a contract of adhesion.[1]  While the court agrees that the franchise

16 agreements (including the arbitration provision) appear to be standardized contracts, the

17 court also notes that plaintiff admits that he was represented by counsel in the lead-up to

18 the agreements' execution, and further admits that he was "able to negotiate some

19 provisions of the agreements."  See Dkt. 29 at 4.  While plaintiff's representation by counsel

20 and his successful negotiation of certain contract provisions does not preclude a finding of

21 procedural unconscionability, it does weaken the level of procedural unconscionability, and

22 _____

23      [1]Plaintiff separately argues, in a footnote, that the procedural unconscionability of the
   contract is "reinforc[ed]" by the "glaring inconsistency" of section 16.5 of the Agreements,
24 which states that, other than claims involving plaintiff's use of defendant's confidential
   information or trademarks, "any legal action in connection with this Agreement will be tried to
25 the court sitting without a jury."  However, the court disagrees that this language is inconsistent
   with section 16.1.  The use of the words "any legal action" and "the court" (as opposed to "a
26 court") show that this clause merely makes clear that, if a claim were to somehow fall outside
   the arbitration provision and were to be heard by a court, then neither party would have a right
27 to a jury trial.  Notably, section 16.5 does not state that all disputes will be resolved by a court,
   it states that "any" legal action will be tried to "the court sitting without a jury."  Thus, if the
28 arbitration clause applies to plaintiff's claims, section 16.5 is irrelevant.

United States District Court

For the Northern District of California

1   thus requires plaintiff to make a stronger showing of substantive unconscionability in order

2   to establish a likelihood of success on the merits of this argument.

3        Regarding substantive unconscionability, plaintiff argues that "there is no mutuality

4   with regard to the parties' rights and remedies as contained in Section 16 of the

5   agreements." Specifically, plaintiff first points to section 16.3, which allows defendant, but

6   not plaintiff, to "obtain at any time in any court of competent jurisdiction any injunctive

7   relief." See Agreements at 30. However, the California Supreme Court has held that lack

8   of mutuality in a contract of adhesion does not necessarily render the contract invalid.

9   Armendariz, 24 Cal. 4th at 117. Instead, "a contract can provide a 'margin of safety' that

10  provides the party with superior bargaining strength a type of extra protection for which it

11  has a commercial need." Id. As applied to this case, while the court agrees that section

12  16.3 grants certain rights to defendant that are not available to plaintiff, those rights are

13  based on legitimate commercial needs. Section 16.3 is limited to instances where "no

14  adequate remedy at law may be available or which may cause [defendant] irreparable

15  harm," and further provides that irreparable harm may be presumed if there is a violation of

16  section 9, 10, 11.2(i), or 14.2. See Agreements at 30. Sections 9, 10, and 14.2 relate to

17  use of defendant's trademarks and confidential information, and section 11.2(i) imposes a

18  non-competition covenant in case plaintiff were to transfer his franchise to someone else.

19  In each of these situations, defendant has a commercial need that is not shared by plaintiff.

20  Under the Agreements, it is defendant (and not plaintiff) who is making its trademarks and

21  confidential information available to the other, and it is defendant (and not plaintiff) who

22  faces the possibility of having plaintiff transfer his franchise agreement in order to start his

23  own independent business. The court further notes that, in situations where an adequate

24  remedy at law is available, or where there is no risk of irreparable harm, defendant remains

25  equally bound to the arbitration provision. Thus, while the court agrees that section 16.3

26  does not provide exactly the same rights to the parties, it does not, by itself, establish that

27  plaintiff is likely to succeed on his argument that the arbitration provision is so one-sided as

28  to be substantively unconscionable.

United States District Court

For the Northern District of California

1    Next, plaintiff argues that section 16.4 of the franchise agreements allows defendant,

2    but not plaintiff, to recover attorneys' fees.  However, in its opposition, defendant attached

3    an amendment to the agreements, allowing plaintiff to recover attorneys' fees if he is the

4    prevailing party.  See Dkt. 24, Exs. A, B.  Plaintiff does not address this argument in his

5    reply.  The court thus finds that there is no lack of mutuality in section 16.4.

6    Next, plaintiff argues that section 16.5 of the agreements lacks mutuality, in that it

7    requires plaintiff to waive "virtually all of his legal rights to obtain damages."  However, a

8    closer look at the language of section 16.5 shows plaintiff's argument to be exaggerated.

9    Section 16.5 provides that both parties waive their rights to punitive and exemplary

10   damages, and further provides that plaintiff (but not defendant) waives his rights to

11   "consequential, special, incidental, or indirect damages," but not his right to ordinary

12   contract damages.  Thus, while the court does agree that section 16.5 provides defendant

13   with a greater entitlement to damages than plaintiff, it does not, by itself, establish that

14   plaintiff is likely to succeed on his argument that the arbitration provision is so one-sided as

15   to be substantively unconscionable.

16   Finally, plaintiff argues that the arbitration provision's venue selection clause is

17   unconscionable, because it requires arbitration proceedings to be conducted in

18   Washington, D.C.  However, the Supreme Court has held that forum selection clauses are

19   to be enforced in "all but the most unusual cases," and the Ninth Circuit has held that a

20   forum selection clause may be found unconscionable only if its "place and manner"

21   restrictions are "unduly oppressive," or "have the effect of shielding the stronger party from

22   liability."  See Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western District of

23   Texas, 134 S.Ct. 568, 583 (2013); Nagrampa, 469 F.3d at 1287.  The Nagrampa court

24   further explained that "a party may attempt to make a showing that would warrant setting

25   aside the forum-selection clause – that the agreement was affected by fraud, undue

26   influence, or overweening bargaining power; that enforcement would be unreasonable and

27   unjust; or that proceedings in the contractual forum will be so gravely difficult and

28   inconvenient that the resisting party will for all practical purposes be deprived of his day in

United States District Court

For the Northern District of California

1  court." 469 F.3d at 1287 (internal quotation and citation omitted).  While the Nagrampa

2  court did ultimately find the forum selection clause to be unconscionable, it did so only after

3  finding that initial offering document "contained misleading language creating the

4  reasonable expectation that it would not be enforced," and because the plaintiff had "no

5  bargaining power" with respect to the forum selection clause.  Neither of those factors are

6  present here, as plaintiff could not have had the reasonable expectation that the forum

7  selection clause would not be enforced, nor did plaintiff lack bargaining power to the same

8  extent that the Nagrampa plaintiff did.  As explained above, plaintiff was able to negotiate

9  changes to the agreements before signing, and was also able to negotiate amendments to

10  the agreements after they were executed.  In short, while plaintiff may have established

11  that arbitrating in Washington, D.C. would be inconvenient, he has not shown that it would

12  be "so gravely difficult and inconvenient" that he would be effectively "deprived of his day in

13  court."  Nor has plaintiff shown that the forum selection clause "was affected by fraud,

14  undue influence, or overweening bargaining power," or that enforcing the clause would be

15  "unreasonable and unjust."

16      Thus, while the court does find some level of substantive unconscionability in section

17  16.3's right to injunctive relief and in section 16.5's damages limitations, it finds no

18  substantive unconscionability as a result of the forum selection clause or the attorneys' fee

19  provision.  Combined with the weak showing of procedural unconscionability, the court

20  finds that plaintiff has not shown that he is likely to succeed on the merits of his claim that

21  the arbitration provision is unconscionable.  Thus, plaintiff's motion for preliminary

22  injunction must be DENIED.  Though the court need not address the remaining three

23  Winter factors, it will discuss the "irreparable harm" prong, as it provides an independent

24  basis for denying plaintiff's motion.

25      Plaintiff first points out that courts have held that a party suffers per se irreparable

26  harm when it is forced to arbitrate claims that are not arbitrable.  See, e.g., Textile

27  Unlimited, Inc. v. ABMH & Co., 240 F.3d 781, 786 (9th Cir. 2001).  However, because the

28  court has already found that plaintiff is unlikely to succeed on his argument that the

United States District Court
For the Northern District of California

1   arbitration provision is unenforceable, <u>Textile Unlimited</u> does not apply in this case.  In his

2   reply, plaintiff presents a different "irreparable harm" argument, which the court will

3   consider even though it was raised for the first time in reply.  Plaintiff argues that a "loss of

4   interest in real property constitutes an irreparable injury," and further argues that defendant

5   "is threatening to shut down plaintiff's business in the Washington, DC arbitration," which, if

6   successful, could result in the loss of real property.  However, plaintiff is not arguing that

7   the arbitration proceedings themselves cause him irreparable injury, he is arguing that an

8   adverse decision in arbitration could cause him irreparable injury.  But in order to obtain an

9   injunction preventing the arbitration itself from going forward, plaintiff must establish that

10  the arbitration itself would cause him irreparable injury.  The court has previously held, in

11  denying plaintiff's application for a temporary restraining order, that plaintiff would suffer

12  only monetary injury (which is not irreparable) if he were forced to proceed with arbitration.

13  <u>See</u> Dkt. 15 at 3 (citing <u>Los Angeles Memorial Coliseum Commission v. National Football</u>

14  <u>League</u>, 634 F.2d 1197, 1202 (9th Cir. 1980)).  In fact, in applying for a temporary

15  restraining order, the only harm identified by plaintiff was the money "required to retain

16  Washington, DC counsel," and the "travel and housing expenses to go to Washington, DC."

17  <u>Id.</u>  In this motion, plaintiff attempts to manufacture some non-monetary irreparable harm,

18  but the court rejects that attempt, and finds that plaintiff would suffer only monetary harm if

19  forced to arbitrate.  Thus, based on plaintiff's failure to establish irreparable harm, the court

20  finds that the motion for preliminary injunction must be DENIED.

21       In his motion, plaintiff presents a separate argument that defendant is attempting to

22  "violate [his] property rights" by requiring reassignment of his leases to defendant.  Plaintiff

23  further alleges that defendant "intentionally hacked into [his] router and crashed his

24  Internet, email, and computer system."  Even accepting these allegations as true, they do

25  not bear on the enforceability of the arbitration provision, and thus, they fall under the

26  purview of the arbitrator.

27       Finally, defendant requests that the court dismiss this case, because "the only claim

28  presented in this case is subject to arbitration."  The court agrees that all of plaintiff's claims

United States District Court

For the Northern District of California

1  are subject to arbitration, which, at the very least, warrants a stay of this action pursuant to

2  9 U.S.C. § 3.  While section 3 states that a court shall stay an action subject to arbitration

3  "on application of one of the parties," the Ninth Circuit has held that "a request for a stay is

4  not mandatory," and that a court may stay the action sua sponte.  Martin Marietta

5  Aluminum, Inc. v. General Electric, Co., 586 F.2d 143, 147 (9th Cir. 1978).  In fact, the

6  Ninth Circuit has also held that "[a] trial court may act on its own initiative to note the

7  inadequacy of a complaint and dismiss it for failure to state a claim."  Sparling v. Hoffman

8  Const. Co., Inc., 864 F.2d 635, 638 (9th Cir. 1988) (internal quotations and citation

9  omitted).  The Sparling court affirmed the district court's sua sponte dismissal of a claim

10  subject to arbitration, even though the defendant had requested only a stay, and not a

11  dismissal.  Id. at 637-38 ("The fact that a dismissal was not requested, however, does not

12  make it improper.").  Sparling explained the circumstances under which such a dismissal

13  would be appropriate, holding that the district court "must give notice of its intention to

14  dismiss and give the plaintiff some opportunity to respond, unless the plaintiff cannot

15  possibly win relief."  Id. at 638 (internal quotations and citation omitted).

16  While the court is inclined to find that plaintiff cannot possibly win relief, it will provide

17  plaintiff an opportunity to respond to this court's intention to dismiss the action rather than

18  stay it.  Accordingly, the court hereby ORDERS plaintiff to SHOW CAUSE as to why his

19  complaint should not be dismissed for failure to state a claim, as plaintiff's asserted claims

20  are subject to the arbitration provisions contained within the relevant franchise agreements.

21  Plaintiff shall have until **March 24, 2014** to file a response to this order, which shall not

22  exceed ten (10) pages.  Any response by defendant shall be filed by **April 4, 2014** and

23  shall be limited to ten (10) pages.

24  In light of this order, plaintiff's motion to expedite trial is DENIED.

25  **IT IS SO ORDERED.**

26  Dated:  March 10, 2014

27  _____
    PHYLLIS J. HAMILTON
    United States District Judge

28